IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH EDWARD RIAD,** *Plaintiff* | : : : | **CIVIL ACTION** |
| v. | : : | |
| **PORSCHE CARS NORTH AMERICA, INC., et al.** *Defendants* | : : : : | No. 18-5175 |

## MEMORANDUM

PRATTER, J.                                                           FEBRUARY 24, 2023

Plaintiff Joseph Edward Riad brought suit against Porsche Cars North America, Inc. and Dr. Ing. h.c. F. Porsche Aktiengellschaft ("Porsche AG")[1] related to injuries Mr. Riad suffered as a result of an alleged defect with his used 2004 Porsche Cayenne Turbo SUV. Porsche AG filed a motion to dismiss the complaint for lack of jurisdiction, arguing that Mr. Riad failed to establish that this federal Court can exercise general or specific personal jurisdiction over it. For the reasons set forth below, the Court will grant Porsche AG's motion to dismiss for lack of jurisdiction.

### BACKGROUND

Joseph Edward Riad purchased a used 2004 Porsche Cayenne Turbo SUV from a Mercedes-Benz dealership located in Wilmington, Delaware. This dealership is not an authorized Porsche-brand dealer. In December 2016, more than five and a half years after he purchased the Porsche, Mr. Riad noticed problems with the vehicle's engine and that coolant liquid was leaking from the vehicle. Mr. Riad contacted his Porsche dealership, and a representative instructed him to drive his vehicle to the nearest service dealership for inspection and repair. On his way to the

---

[1] Until December 2, 2022, this litigation was on the docket of the Honorable C. Darnell Jones, II, and when Judge Jones retired the matter was transferred to this Court. This ruling is based upon the submissions to and hearing before Judge Jones.

1

dealership, Mr. Riad alleges that smoke came through the air conditioning vents into the interior of the vehicle. Mr. Riad claims that he inhaled this smoke and as a result of his exposure to these fumes, he was diagnosed with permanent lung damage and asthma. Mr. Riad then brought this action against Porsche Cars North America Inc. ("Porsche NA") and Porsche AG seeking to hold both entities liable for his alleged injuries.

The defendants filed motions to dismiss the amended complaint, and in response, Mr. Riad filed a motion for jurisdictional discovery. The court referred the motion for jurisdictional discovery to a magistrate judge, denying the motions to dismiss without prejudice to allow Porsche AG and Porsche NA to refile the motions after the resolution of the jurisdictional discovery issue. The magistrate judge granted in part and denied in part Mr. Riad's motion for jurisdictional discovery and allowed Mr. Riad to conduct limited jurisdictional discovery.

Following the limited jurisdictional discovery period, Porsche AG and Porsche NA both filed "renewed" or second motions to dismiss Mr. Riad's complaint for lack of personal jurisdiction. Porsche NA's motion to dismiss the amended complaint for lack of personal jurisdiction was denied because the court found it could exercise general jurisdiction over Porsche NA. The court held an evidentiary hearing on the issue of whether Porsche AG could properly be subjected to the jurisdiction of the court. Porsche AG and Mr. Riad later filed multiple "letter memoranda" on the docket, asserting additional arguments regarding whether Porsche AG is subject to the jurisdiction of the court. The letters focus on the applicability of the Supreme Court of Pennsylvania's December 22, 2021 decision in *Mallory v. Norfolk Southern Railway Company*, 266 A.3d 542 (Pa. 2021) to the court's exercise of personal jurisdiction over Porsche AG.[2]

---

[2] In *Mallory*, the Supreme Court of Pennsylvania concluded that Pennsylvania's "statutory scheme of conditioning the privilege of doing business in the Commonwealth on the submission of the foreign corporation to general jurisdiction in Pennsylvania courts strips foreign corporations of the due process safeguards guaranteed in *Goodyear* and *Daimler*. Legislatively coerced consent to general jurisdiction is

## LEGAL STANDARD

Federal district courts typically exercise personal jurisdiction according to the law of the state where the court sits. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). Because this Court sits in Pennsylvania, it will apply Pennsylvania's long-arm statute, which provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States . . . based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b); *see O'Connor*, 496 F.3d at 316. Due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

There are two types of personal jurisdiction: general and specific. *O'Connor*, 496 F.3d at 317. General personal jurisdiction requires that the defendant have "continuous and systematic" contacts with the forum state. *Id.* Specific jurisdiction involves a three-part test. *Id.* "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "And third, if the prior two requirements are met, a court may consider whether the exercise of

---

not voluntary consent and cannot be constitutionally sanction. Accordingly, our statutory scheme is unconstitutional to the extent that it affords Pennsylvania courts general jurisdiction over foreign corporations that are not at home in the Commonwealth." 266 A.3d at 571. The Supreme Court of the United States granted a petition for a writ of certiorari in this case on April 25, 2022. *Mallory v. Norfolk S. Ry. Co.*, 142 S. Ct. 2646 (2022). The Supreme Court has not yet rendered an opinion on the case.

jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* (citing *Burger King*, 471 U.S. at 476) (internal quotation marks omitted).

In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court takes the allegations of the complaint as true. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent evidence, contacts with the forum state sufficient to establish personal jurisdiction. *Id.* The plaintiff must establish those contacts with reasonable particularity. *See Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Once the plaintiff makes out a prima facie case in support of personal jurisdiction, the burden shifts to the defendant to establish that some other considerations exist which would render the exercise of personal jurisdiction unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992).

## DISCUSSION

### I. Porsche AG Is Not "at Home" in Pennsylvania

For the Court to exercise general jurisdiction over a corporation, the corporation must be "at home" in the forum seeking to exercise jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation is "at home" in its place of incorporation and its principal place of business. *Id.* Porsche AG "is incorporated under the laws of the Federal Republic of Germany, and maintains its principal place of business and corporate headquarters in Stuttgart, Germany." Mot. to Dismiss, at 5. Because its place of incorporation and its principal place of business are not in Pennsylvania, this Court is unable to exercise general jurisdiction over Porsche AG under the traditional principles governing general jurisdiction. *See Daimler*, 571 U.S. at 137.

4

## II. Porsche NA Is Not an Alter Ego of Porsche AG

Mr. Riad does not dispute that the Court cannot exercise general jurisdiction over Porsche AG based on Porsche AG being "at home" in Pennsylvania. Rather, Mr. Riad argues that because this Court has found that it can exercise general jurisdiction over Porsche NA, the Court can impute this jurisdiction to Porsche AG under the theory that Porsche NA is an alter ego of Porsche AG.

"The alter ego theory permits a court to impute the in-forum contacts of one corporate entity to another, related corporate entity where the plaintiff can 'demonstrate that the out-of-forum corporation either controls or is controlled by an in-forum affiliate to such a degree that the two corporations operate as a single, amalgamated entity.'" *Katz v. DNC Servs. Corp.*, No. 16-cv-5800, 2017 WL 5885672, at *4 (E.D. Pa. Nov. 29, 2017) (quoting *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 596 (M.D. Pa. 2009)). "[T]he alter ego theory . . . instructs that, if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise controls the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (internal citations and quotation marks omitted).

"Proving that a corporation is merely an alter ego is a burden that is notoriously difficult for plaintiffs to meet." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018) (internal quotation marks omitted). "[I]n order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such." *Id.* at 365–66. "In deciding whether to apply the alter ego theory, [the Court] must start from the general rule that the corporate entity should be upheld unless specific, unusual circumstances call for an exception." *Reverse Vending Assocs. v. Tomra Sys. US, Inc.*, 655 F. Supp. 1122, 1128 (E.D. Pa. 1987); *see also In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 317 (W.D. Pa. 2010)

5

("When a subsidiary of a foreign corporation is carrying on business in a particular jurisdiction, the parent company is not automatically subject to jurisdiction in that state because of the presumption of corporate separateness.").

The alter ego theory requires more than a traditional structural relationship between a parent and its subsidiary. "Under the alter ego theory of jurisdiction, a court may exercise personal jurisdiction over the parent based on the subsidiary's connection to the forum if the plaintiff can show that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Radian Guar. Inc. v. Bolen*, 18 F. Supp. 3d 635, 648 (E.D. Pa. 2014); *accord Neopart Transit, LLC v. CBM N.A.*, 314 F. Supp. 3d 628, 645 (E.D. Pa. 2018) ("[T]he most significant pieces of evidence are those that concern the existence (or non-existence) of a parent company's control over its subsidiaries' day-to-day functions."). District courts typically consider the following factors as party of this inquiry:

> (1) ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subsidiary which the principal corporation would normally conduct through its own agents or departments; (9) marketing by the subsidiary on behalf of the principal corporation, or as the principal's exclusive distributor; and (10) receipt by the officers of the subsidiary corporation of instruction from the principal corporation.

*Radian*, 18 F. Supp. 3d at 648.

Porsche AG argues that it and Porsche NA are "wholly separate, distinct, and adequately capitalized legal entities." Br. in Supp. of Mot. to Dismiss, at 2. The two are related, but separate, corporate entities that interact with each other pursuant to an arm's length, written contract—the Importer Agreement. Although they "maintain a contractual relationship, neither one exercises dominion or undue control over the other." *Id.* at 7. Critically, the Importer Agreement provides that Porsche NA "is not authorized as a legal representative of Porsche [AG]" and is an

6

"autonomous legal entity." *Id.* at 2–3. Further, Porsche NA "conclude[s] all business transactions . . . in its own name and for its own account," and maintains independent corporate books, records, and bank accounts from Porsche AG. Reply Br. in Supp. of Mot. to Dismiss, at 3.

Porsche AG and Porsche NA also have distinct corporate functions. Porsche AG designs and manufactures new Porsche-brand motor vehicles in Europe. Porsche AG does not import or distribute vehicles in the United States, nor does it maintain a network of authorized dealerships in Pennsylvania. Porsche NA, on the other hand, is the distributor of new Porsche-brand cars in the United States. Porsche NA purchases vehicles from Porsche AG in Germany, where Porsche AG relinquishes title to Porsche NA, and then Porsche NA imports the vehicles to the United States where it distributes the vehicles to authorized dealerships for sale to consumers.

Porsche AG contends that Porsche NA is not simply a "shell" of Porsche AG because the two are independent corporate entities. Br. in Supp. of Mot. to Dismiss at 8. Porsche NA "retains independent 'decision-making authority on all issues regarding sales, sales promotion, advertising, training, finance, IT, market research, and after-sales service,' and even possesses the option to terminate its relationship with Porsche AG (*i.e.*, the Importer Agreement) without cause." Reply Br. in Supp. of Mot. to Dismiss, at 7. Porsche NA is also responsible for managing Porsche motor vehicle sales in the United States and for coming up with an action plan related to sales. Finally, Porsche NA's president and Chief Executive Officer—not an executive from Porsche AG—is in charge of Porsche NA's business activities related to Porsche vehicles in the United States.

Based on these facts, Porsche AG argues that Porsche NA is not an alter ego of Porsche AG so the Court cannot exercise general jurisdiction over Porsche AG under the alter ego theory.

Mr. Riad argues that the facts demonstrate that Porsche NA is an alter ego of Porsche AG, so the Court's exercise of general jurisdiction over Porsche NA can be imputed to Porsche AG.

7

Mr. Riad notes that Porsche NA is a wholly owned subsidiary of Porsche AG and posits that both Porsche AG and Porsche NA profit from their corporate relationship. Mr. Riad highlights five key facts in presenting his argument: (1) Porsche AG and Porsche NA use the same brands, trademarks and service marks; (2) Porsche AG maintains a website that directs customers to dealers or service providers authorized by Porsche NA in the United States; (3) Porsche AG has an opportunity to consent to certain executive hiring at Porsche NA; (4) there is overlap between the directors of Porsche NA and board members of Porsche AG; and (5) various provisions in the Importer Agreement demonstrate that Porsche AG exercises some level of control over Porsche NA.

On the issue of executive hiring at Porsche NA, Mr. Riad points out that the Importer Agreement provides that Porsche NA's "[s]enior executives, general managers and Directors may only be appointed with the prior written consent of Defendant Porsche AG." Mem. of L. in Opp'n to Mot. to Dismiss at 8. However, Porsche AG counters that while this is true, Porsche AG can only withhold consent based on reasonable cause, a critical limitation on the control this provision affords to Porsche AG.

On the issue of overlap between the boards of directors, Mr. Riad notes that Detlev von Platen was the President of Porsche NA and further, that Porsche AG's written consent is required before Porsche NA can terminate or replace Mr. Von Platen as the President. "Mr. Von Platen served both as a member of the Executive Board for Sales and Marketing of Defendant Porsche A.G. and . . . served both as President and as a Director for Defendant Porsche N.A." suggesting that there is commonality between the officers of Porsche AG and Porsche NA. Mem. of L. in Opp'n to Mot. to Dismiss at 9. Mr. Riad also identifies multiple overlapping board members including Wolfgang Porsche (director of Porsche NA and Chairman of the supervisory board of Porsche AG), Mitchell Kish (director of Porsche NA and shareholder member of the supervisory

8

board of Porsche AG), Michael Bock (director of Porsche NA and member of the management board of Porsche AG), Lutz Meschke (director of Porsche NA and Deputy Chairman of the Executive Board of Porsche AG), Clauss Berning (director of Porsche NA and member of the management board of Porsche AG), Bernhard Meyer (director of Porsche NA and Deputy Chairman of the Executive Board of Porsche AG), and Dr. Oliver Blume (director of Porsche NA and member of the executive board of Porsche AG).

Porsche AG argues "that there is not complete identity of the boards," and that "it is the officers who take part in the day-to-day operations of the business . . . not the directors." May 13, 2021 Evid. Hr'g Tr. at 58:1–5. This distinction between officers and directors is important because the overlapping board members identified by Mr. Riad are all "directors" and thus do not take part in the day-to-day management and operations of Porsche NA's business, making the overlap in board members insufficient to show that Porsche AG controlled the day-to-day business operations of Porsche NA.

Finally, Mr. Riad identifies several provisions in the Importer Agreement which he contends support the finding that Porsche NA is an alter ego of Porsche AG: Porsche AG transfers the right to sell Porsche vehicles in the United States; Porsche AG exercises some level of control over the corporate structure of Porsche NA because the Importer Agreement "specifies how Porsche NA is to be organized, with respect to Management [Section 2.3.1], Human Resources [Section 2.3.2], Operating Premises [Section 2.4], Finance [Section 2.5], Business Development Planning [Section 2.6], Programs and Systems [Section 2.7], Communication [Section 2.8], and Public Relations Work [Section 2.9]"; "Porsche AG dictates the duties and responsibilities of Porsche NA's Vice President and Chief Operating Officer"; Porsche NA must promote the interests of Porsche AG and the Porsche brand; and Porsche NA must comply with the guidelines

9

set forth in the Importer Agreement by Porsche AG and must provide a sales report to Porsche AG. Mem. of L. in Opp'n to Mot. to Dismiss at 8–16.

Based on the jurisdictional facts presented at the hearing, the Court concludes that Porsche NA is not an alter ego of Porsche AG. Mr. Riad has failed to establish that Porsche AG "controls the day-to-day operations of [Porsche NA] such that [Porsche NA] can be said to be a mere department of [Porsche AG]," *Radian*, 18 F. Supp. 3d at 648, or that Porsche AG and Porsche NA "operate as a single entity or unified and cohesive and economic unit" such that Porsche AG can be found to "so control and dominate [Porsche NA] as in effect to disregard the latter's independent corporate existence." *Katz*, 2017 WL 5885672, at *5. Not only do Porsche AG and Porsche NA have distinct functions, but Porsche NA operates independently from Porsche AG in distributing and selling Porsche-brand motor-vehicles in the United States. Further, Porsche NA retains corporate independence from Porsche AG and is responsible for making day-to-day business decisions regarding sales and marking.

Although Mr. Riad points to facts which demonstrate that Porsche AG does exercise some level of control over Porsche NA, these facts merely suggest a typical parent–subsidiary relationship, or an arm's length contractual relationship, between Porsche AG and Porsche NA. *See In re Chocolate*, 674 F. Supp. 2d at 599–600 ("As the controlling shareholder of Mars Canada, Mars Global is entitled to ordain Mars Canada's officers and directors, influence executive compensation, approve budgets, gather information about corporate performance, and receive distributions of subsidiary profits. These activities typify the standard parent-subsidiary interactions and do not reflect daily, operational control that is the *sine qua non* of an alter ego relationship." (internal citations omitted); *see also In re Enter.*, 735 F. Supp. 2d at 322–23 ("The sharing by the corporations of directors and the ownership by the defendant parent of one-hundred

percent of [the subsidiary's] stock do not implicate that defendant parent controlled the subsidiary to the extent necessary to find that [the subsidiary] is an alter ego of defendant parent. A degree of control naturally flows from these aspects of the parent-subsidiary relationship, but this incidental control does not rise to the level required to permit the exercise of jurisdiction over the parent."); *Poe v. Babcock Int'l, PLC*, 662 F. Supp. 4, 6 (M.D. Pa. 1985) (holding that a parent company's "exercise [of] some degree of control over the subsidiary" does not constitute an alter ego relationship unless the latter has become indistinguishable from the former). These facts do not, however, lead the Court to the conclusion that Porsche AG and Porsche NA are essentially the same corporate entity for jurisdictional purposes.

A critical fact leading to this conclusion is the language of the Importer Agreement, which governs the relationship between Porsche AG and Porsche NA. Section 1.5 of the Importer Agreement provides that "[Porsche NA] shall conclude all business transactions arising from this contract, in its own name, and for its own account. [Porsche NA] is not authorized as a legal representative of Porsche [AG]." May 13, 2021 Evid. Hr'g Tr. at 41:3–6. This specific language undermines Mr. Riad's argument that Porsche NA is merely a "shell" of Porsche AG. However, in identifying other provisions of the Importer Agreement which suggest control by Porsche AG over Porsche NA, Mr. Riad fails to address this key language in Section 1.5. During the evidentiary hearing regarding the Court's exercise of jurisdiction over Porsche AG, the then-presiding district court judge reasoned that the problem with Mr. Riad's approach—considering other provisions of the Importer Agreement but overlooking Section 1.5—is one of ambiguity. May 13, 2021 Evid. Hr'g Tr. at 41:13–21. It creates a situation where the judge would have to exercise his or her discretion by disregarding Section 1.5 to interpret the remainder of the agreement as Mr. Riad asks the Court to do. *Id.* This is not "what the Court is obliged to do or is allowed to do." *Id.*

The Court finds that Porsche NA is not an alter ego of Porsche AG and thus declines to impute its exercise of general jurisdiction over Porsche NA to Porsche AG.

### III. An Agency Relationship Between Porsche NA and Porsche AG Is Insufficient to Establish General Jurisdiction

Mr. Riad also argues that the agency relationship between Porsche NA and Porsche AG is a sufficient basis to impute the Court's general jurisdiction over Porsche NA to Porsche AG. The Supreme Court of the United States rejected the agency theory as a means of exercising jurisdiction over foreign defendants, concluding that the "agency theory . . . appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction'" the Supreme Court rejected in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 928 (2011). *Daimler*, 571 U.S. at 136; *see also Flynn v. Hovensa, LLC*, No. 3:14-cv-43, 2014 WL 3375238, at *5 (W.D. Pa. July 3, 2014) ("[T]he *Daimler* Court rejected the use of the 'agency' theory to exercise general personal jurisdiction over a foreign corporation based on unrelated contacts of its subsidiary.").

The Court finds that to the extent an agency relationship exists between Porsche NA and Porsche AG, it is an insufficient basis for this Court to impute the contacts of Porsche NA to Porsche AG.

### IV. This Court Cannot Exercise Specific Jurisdiction Over Porsche AG

Because the Court cannot exercise general jurisdiction over Porsche AG, it must consider whether or not the Court can exercise specific jurisdiction over Porsche AG.[3] "Specific jurisdiction

---

[3] Porsche AG argues that Mr. Riad has waived any argument that the Court can exercise specific jurisdiction over Porsche AG because he failed to address specific jurisdiction in his response to the "renewed" motion to dismiss. Mr. Riad argues that he fully briefed the issue in his response to Porsche AG's original motion to dismiss, and that he fully incorporated his response in its response to the renewed motion: "The Plaintiff hereby adopts and incorporates by reference the arguments set forth on pages 28

12

. . . depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*, 564 U.S. at 919).

The Third Circuit Court of Appeals has set forth a three-part test to analyze whether a party's contacts are sufficient to permit the exercise of specific jurisdiction in accordance with the mandates of due process: (1) "the defendant must have purposefully directed its activities at the forum"; (2) "the litigation must arise out of or relate to at least one of those activities"; and (3) the exercise of jurisdiction must "comport[] with traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 317, 324 (internal quotation marks omitted).

### A. **Purposefully Directed Activities at the Forum**

Porsche AG has not purposefully directed its business activities at Pennsylvania. *See O'Connor*, 496 F.3d at 317. "[T]he critical finding that the defendant purposefully availed itself of the privilege of conducting activities within the forum requires contacts that amount to a deliberate reaching into the forum state to target its citizens." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103–04 (3d Cir. 2009); *see also Shuker*, 885 F.3d at 780 (concluding that "efforts 'to exploit a national market' that 'necessarily included Pennsylvania' are insufficient" to establish purposeful availment as is required for specific jurisdiction). Porsche AG has taken no action that can be characterized as a "deliberate reaching into [Pennsylvania] to

---

through 35 of his Opposition to Porsche AG's original Motion to Dismiss as if fully set forth herein." Mem. of L. in Opp'n to Mot. to Dismiss, at 17. Mr. Riad plainly did not waive his arguments regarding specific jurisdiction. Thus, the Court will consider whether it can exercise specific jurisdiction over Porsche AG.

target its citizens." *D'Jamoos*, 566 F.3d at 104. Porsche AG is a German company that designs and manufactures Porsche-brand motor vehicles in Germany. It then sells these vehicles to Porsche NA, the company that is responsible for importing and distributing these vehicles in the United States, including in Pennsylvania. Porsche AG does not import, supply, distribute, or sell such vehicles in Pennsylvania. Porsche AG is not registered to do business in Pennsylvania, does not maintain offices or bank accounts in Pennsylvania, and does not pay taxes in Pennsylvania.

Mr. Riad argues that Porsche AG's business activities in Germany, including designing and manufacturing the cars, permits the Court to conclude that Porsche AG placed the vehicles into the stream of commerce in Pennsylvania and thus that the exercise of specific personal jurisdiction is appropriate. The stream-of-commerce theory of personal jurisdiction contends "that specific personal jurisdiction exists over a non-resident defendant when that defendant 'has injected its goods into the forum state indirectly via the so-called stream of commerce,' rendering it foreseeable that one of the defendant's goods could cause injury in the forum state." *Shuker*, 885 F.3d at 780 (quoting *D'Jamoos*, 566 F.3d at 104–05).

Mr. Riad's stream-of-commerce theory is unavailing in light of the Supreme Court's decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), and the Third Circuit Court of Appeals decision in *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2018). The Third Circuit Court of Appeals summarized its rejection of the stream-of-commerce theory of personal jurisdiction as follows:

> A plurality of Supreme Court Justices has twice rejected the stream-of-commerce theory, *see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877-85, 131 S. Ct. 2780, 180 L.Ed.2d 765 (2011) (plurality opinion); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108-13, 107 S. Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion), stating, in a manner consistent with our own case law, that plaintiffs must instead rely on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Asahi*, 480 U.S. at 109, 107 S. Ct. 1026;

14

> *see D'Jamoos*, 566 F.3d at 102-03. Indeed, the Supreme Court has recently held that "[t]he bare fact that [a non-resident defendant] contracted with a [resident] distributor is not enough to establish personal jurisdiction in the State." *Bristol-Myers Squibb Co. v. Superior Court*, —— U.S. ——, 137 S. Ct. 1773, 1783, 198 L.Ed.2d 395 (2017). We thus have no cause to revisit our Court's precedent on this issue, and we decline to adopt the Shukers' stream-of-commerce theory of specific personal jurisdiction. See *D'Jamoos*, 566 F.3d at 102-06.

*Shuker*, 885 F.3d at 780. Here, like in *Shuker*, the Court will decline to adopt Mr. Riad's stream-of-commerce theory of specific jurisdiction.

Lastly, Mr. Riad contends that because he was injured in Pennsylvania, the Court can exercise jurisdiction over Porsche AG. However, the Supreme Court of the United States has held that "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). The question is "whether the defendant's conduct connects him to the forum in a meaningful way," not where the plaintiff was injured. *Id.* The fact that Mr. Riad was injured in Pennsylvania is simply not enough to demonstrate that Porsche AG was connected to Pennsylvania "in a meaningful way." *Id.*

This Court cannot exercise specific jurisdiction over Porsche AG because Porsche AG did not purposefully direct its activities at the forum Commonwealth of Pennsylvania.

### B. Litigation Arising Out of One of Those Activities

Even if the Court were to assume, *arguendo*, that Porsche AG purposefully directed its activities at the forum Commonwealth of Pennsylvania, the present litigation does not arise out of those activities. *See O'Connor*, 496 F.3d at 317. For a Court to exercise specific jurisdiction, there must be "an affiliation between the forum and the underlying controversy, principally, [an] *activity or an occurrence that takes place in the forum State.*" *Bristol-Myers Squib*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919) (emphasis added). Thus, specific jurisdiction is limited to the adjudication of issues arising out of the "very controversy that establishes jurisdiction." *Id.*

15

The issue giving rise to this litigation does not arise out of any Porsche AG activity directed at Pennsylvania. Mr. Riad suffered injuries from a defect in a used 2004 Porsche-brand vehicle that he purchased at a Mercedes-Benz dealership located in Wilmington, Delaware in 2011. More than five years after he purchased the vehicle, while living in Pennsylvania, Mr. Riad noticed that coolant liquid was leaking from the vehicle's engine. Mr. Riad apparently suffered from injuries after smoke emanated through the air conditioning vents into the vehicle, and Mr. Riad inhaled smoke and toxic fumes. Mr. Riad attempts to argue that Porsche AG's activities did give rise to this lawsuit by asserting that he was influenced to purchase the Porsche after he saw Porsche AG marketing materials and ad campaigns in Pennsylvania. He contends that "but for" Porsche AG's marketing in Pennsylvania, he would not have purchased the Porsche and thus would not have suffered the injuries giving rise to the present litigation.

These purported contacts are simply insufficient to establish the requisite minimum contacts for specific jurisdiction, and even more, Mr. Riad's lawsuit does not arise out of these purported contacts. So, the Court is unable to exercise specific jurisdiction over Porsche AG.[4]

For all of these reasons, the Court cannot exercise specific personal jurisdiction over Porsche AG.

---

[4] The Court need not analyze whether exercising jurisdiction over Porsche AG comports with principles of fair play and substantial justice because Porsche AG did not purposefully direct conduct at Pennsylvania and thus lacks the requisite minimum contacts for the exercise of specific jurisdiction. *See Burger King*, 471 U.S. at 476 ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'") (quoting *Int'l Shoe*, 326 U.S. at 320).

## CONCLUSION

The Court will grant Porsche AG's motion to dismiss Mr. Riad's complaint for lack of jurisdiction. An appropriate order follows.

BY THE COURT:

_/s/ Gene E.K. Pratter_
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE
