IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSEPH EDWARD RIAD,** | **CIVIL ACTION** |
| Plaintiff, | |
| v. | No. 18-5175-KSM |
| **PORSCHE CARS NORTH AMERICA, INC.,** | |
| Defendant. | |

**MEMORANDUM**

MARSTON, J.                                                                                                                                                    July 30, 2024

Plaintiff Joseph Edward Riad brings product liability claims against Defendant Porsche Cars North America, Inc.[1] for injuries caused by defective pipes in the cooling system of his 2004 Porsche Cayenne Turbo. (*See* Doc. No. 24.) Porsche has moved for summary judgment on all claims. (Doc. No. 98.) Riad opposes that motion. (Doc. No. 113.) For the reasons discussed below, Porsche's motion is granted.[2]

**I. BACKGROUND**[3]

In 2011, Riad purchased a used 2004 Porsche Cayenne Turbo. (Doc. No. 113-2 at ¶¶ 1–2.) As with all 2003–2006 Cayenne models, the engine cooling system in Riad's Cayenne included pipes made with a Nylon 66/plastic composite. (*Id.* at ¶ 3.)[4] On November 30, 2016,

---

[1] This case was previously assigned to the late Honorable Gene E.K. Pratter. Judge Pratter dismissed co-Defendant Dr. ING. H.C.F. Porsche Aktiengellschaft for lack of personal jurisdiction. (*See* Doc. Nos. 79, 80.) On May 22, 2024, the case was reassigned to the undersigned.

[2] The Court disposes of this motion on the papers. *See* E.D. Pa. Local R. 7.1(f) ("Any interested party may request oral argument on a motion. The court may dispose of a motion without oral argument.").

[3] Most of the facts in this case are hotly disputed. For purposes of this motion, the Court views the evidence in the light most favorable to Riad as the nonmovant.

[4] These pipes were the subject of a previous class action in which the class alleged that the pipes

while Riad was driving to his local Porsche dealer in Newark, Delaware, the pipes in his car's cooling system cracked, causing the antifreeze within the system to leak, vaporize, and make its way into the cabin of the car. (*Id.* at ¶¶ 7–10.) According to Riad, "there was just smoke coming out from everywhere, like from under the car, like from the exhaust area and from the vents." (Riad Oct. 25, 2023 Dep. Tr. at 245:14–20; *see also id.* at 255:15–21 ("It was—it was really uncomfortable. I could taste it. I could smell it. I was coughing. It was very uncomfortable. It was everywhere. It was like in the car. Even with the windows down, the smoke was in there.").) Riad called the Delaware Porsche dealership and spoke to one of the service people, who told him he should continue to make his way to the dealership. (Riad Oct. 25, 2023 Dep. Tr. at 232:13–18, 240:12–14, 244:5–245:9, 249:4–7.) Riad inhaled the fumes for the remainder of the drive and arrived at the dealership feeling dizzy, nauseous, and like his lungs were "burning up." (Riad Dec. 1, 2023 Dep. Tr. at 372:15–24; *see also id.* at 374:20–375:5 (testifying that when he reached the dealership, he "got out of the car, crawled out of the car . . . and I was just hacking, hacking, hacking and I threw up and I laid on the ground.").)

The day after the accident Riad continued to experience shortness of breath. (Doc. No. 113-6 at 3.) He visited his local emergency room and was given steroids and nebulizer treatments. (*Id.*)[5] In the years since the incident, Riad claims he has seen minimal improvement

---

prematurely degrade from the inside out. (Doc. No. 113-2 at ¶ 4.) The class action settled without an adjudication on the merits. (*Id.* at ¶ 6.)

[5] In the 24 hours after the accident, Riad also called Porsche's customer service line and spoke with two customer service agents. (Doc. Nos. 111-2, 111-3 (audio recordings) (on file with the Court).) Although neither call is relevant to the Court's disposition of the current motion, the Court feels compelled to address the appalling conduct of current Plaintiff's counsel, Mickala Rector (who is also Riad's fiancé), during the second of those calls. (Doc. No. 111-3 at 6:19–9:37.) Riad, not Rector, began the call with the Porsche representative, who explained to Riad that the company would not cover the costs of repairing the 2004 Cayenne because the extended warranty period offered under the earlier class action settlement, *see supra.* n.4, had lapsed. (*Id.* at 6:10–50.) After some back and forth between Riad and the representative, Rector joined the call and began to berate the representative, telling her to "shut up" and saying that Riad could "simply just sue [Porsche]" if the company wasn't willing to cover Riad's

2

in his respiratory condition. (*Id.*) Despite having no history of respiratory problems before the accident, Riad has regularly used inhalers since that date and repeatedly sought treatment for the condition from his primary care physician and pulmonologist, who diagnosed Riad with asthma. (*Id.* at 3.)

On November 30, 2018, Riad filed this product liability action against Porsche, alleging that the plastic cooling pipes in his 2004 Cayenne were defective and that a crack in one of the pipes allowed toxic fumes to enter the cabin of the car, causing lasting damage to his lungs. (Doc. Nos. 1, 24.) He brings claims for strict liability design defect and negligent failure to warn under Pennsylvania law. (Doc. No. 24 at 8–10.) Porsche moves for summary judgment on both counts. (Doc. No. 98.)

## II.     LEGAL STANDARD

Summary judgment is appropriate when the "materials in the record," show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

damages. (*Id.* at 7:00–7:15.) Rector then told the agent to "go get your ass, go find a supervisor right now and stop pretending you understand the law." (*Id.* at 7:20–31.) When the representative tried to explain that her supervisor was unavailable, Rector interrupted, telling the representative again to "shut up" and "go get me a supervisor now." (*Id.* at 7:32–8:13.) Rector then threatened the representative, telling her, "you will not work for Porsche after today," and saying, "you are the worst customer representative I've ever heard in my life," and "I do not appreciate being pulled away from my work to deal with your stupidity." (*Id.* at 7:58–8:10.) The representative, who exhibited a commendable amount of professionalism during this encounter, was eventually able to connect to a supervisor. (*Id.* at 9:10–14.) But before she could transfer the call, Rector asked for her full name, stating again that "I want to make sure you never work for Porsche again," and ending the call with a sarcastic, "so sorry for your job loss right around the holidays." (*Id.* at 9:15–37.) Rector's conduct would be unacceptable from any decent member of society, but the Court finds it extremely concerning that a member of the Bar, holding herself out as such, would act this way.

3

248 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23 (quotation marks omitted).

### III.   DISCUSSION

Riad brings two product liability claims—one for strict liability design defect and one for negligent failure to warn. To prevail on either claim, Riad must prove there is "a causal connection" between the antifreeze fumes that entered the cabin of his 2004 Cayenne and his respiratory injuries. *See Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 524 (W.D. Pa. 2003) ("Proof of causation is a necessary element in a products liability action. Absent a causal relationship between the defendant's product and the plaintiff's injury the defendant cannot be held liable on a theory of negligence, strict liability, or misrepresentation."); *Thomas v. Hamilton Beach/Proctor-Silex, Inc.*, No. 2:04-cv-01841, 2007 WL 2080485, at *3 (W.D. Pa. July 13, 2007) ("The law is well established in this Commonwealth that Plaintiff must prove, as a necessary element of her products liability action, a causal connection between the injuries she claimed she sustained and her alleged exposure to a substance released or emitted from the toaster oven, regardless of whether he claim sounds in negligence, strict liability or breach o[f] warranty."); *see also Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 99 (3d Cir. 1982) (requiring proof that the "defect was the proximate cause of decedent's injuries" before strict liability case could go to a jury); *Mains v. Sherwin-Williams Co.*, 640 F. Supp. 3d 373, 387 (E.D. Pa. 2022) (noting that to prevail on negligence-based product liability claim, the plaintiff

must establish, among other things, "a causal connection between the conduct and the resulting injury").

"Normally a plaintiff may establish his case of causation with any evidence, direct or circumstantial, which tends to show defendant's actions as the legal cause of his harm." *Hamil v. Bashline*, 392 A.2d 1280, 1285 (Pa. 1978). "Where, however, the ultimate determinations lie beyond the knowledge or expertise of the average layperson, expert testimony is permitted (and sometimes required)" to assist the jury in deciding the causation issue. *Id.* at 1285; *cf. In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practice, & Prods. Liab. Litig.*, 226 F. Supp. 3d 557, 569–70 (D.S.C. 2017) ("While the specific language used by courts vary to some degree, all jurisdictions require expert testimony at least where the issues are medically complex and outside common knowledge and lay experience.") (collecting cases). Pennsylvania courts recognize that generally, "the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson." *Hamil*, 392 A.2d at 1285. Accordingly, "[f]or a plaintiff to make out a cause of action in such a case . . . , the law requires that expert medical testimony be employed" to show "the injury in question did, with a reasonable degree of medical certainty, stem from the negligent act alleged." *Hamil*, 392 A.2d at 1285; *see also, e.g.*, *Lattanze v. Silverstrini*, 448 A.2d 605, 608 (Pa. Super. Ct. 1982) ("Generally, a plaintiff must prove causation by expert medical testimony."); *Bixler v. Lamendola*, Civil Action No. 3:20-CV-1819, 2022 WL 2441567, at *4 (M.D. Pa. July 5, 2022) (explaining that "Pennsylvania courts generally require expert medical testimony to prove causation in personal-injury actions" in the context of a motion for summary judgment). Porsche argues that Riad cannot satisfy that standard here because his only causation expert, Dr. Saad

Ashraf, MD,[6] issued an opinion that was not to a reasonable degree of medical certainty.[7] The Court agrees.

"Under Pennsylvania law, experts on medical causation must testify to 'a reasonable degree of medical certainty.'" *Hoefling v. U.S. Smokeless Tobacco Co.*, 576 F. Supp. 3d 262, 285 (E.D. Pa. 2021) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 750 (3d Cir. 1994)); *see also Kravinsky v. Glover*, 396 A.2d 1349, 1355–56 (Pa. Super. Ct. 1979) ("When a party must prove causation through expert testimony the expert must testify with 'reasonable certainty' that 'in his professional opinion, the result in question did come from the cause alleged.'" (quoting *McCrosson v. Phila. Rapid Transit Co.*, 129 A. 568, 569 (Pa. 1925))); *cf. McMahon v. Young*, 276 A.2d 534, 535 (Pa. 1971) ("It is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment."). "This is not merely an evidentiary standard; it forms part of the plaintiff's burden of proof." *Hoefling*, 576 F. Supp. 3d at 285; *cf. In re Paoli R.R. Yard PCB*

---

[6] Dr. Ashraf is a board certified pulmonary and critical care specialist. (Doc. No. 99-5 at 2 (Dr. Ashraf's expert report).)

[7] Porsche's argument presumes that an expert is required to prove causation in this case. Porsche is partially correct. As noted above, "Pennsylvania courts generally require expert medical testimony to prove causation in personal-injury actions." *Bixler v. Lamendola*, Civil Action No. 3:20-CV-1819, 2022 WL 2441567, at *4 (M.D. Pa. July 5, 2022); *see also Hamil*, 392 A.2d at 1285. One exception to this rule, however, is that expert testimony is not required to prove causation "if there is an '*obvious* causal relationship' between the alleged negligent act and the injury complained of." *Bixler*, 2022 WL 2441567, at *5 (quoting *Lattanze v. Silvestrini*, 448 A.2d 605, 608 (Pa. Super. Ct. 1982)); *cf. Hamil*, 392 A.2d at 1285 (recognizing "in certain situations involving physical injury, it is possible for a jury reasonably to infer causation from the circumstances of an accident or occurrence"). Neither party discusses that exception here. Instead, Porsche takes it as a foregone conclusion that expert testimony is necessary (Doc. No. 98-3 at 8), and Riad does not argue otherwise (*see generally* Doc. No. 113 at 13–22). Indeed, Riad relies on Dr. Ashraf's conclusions and argues his opinions are sufficient to show causation under Third Circuit precedent. (*Id.*) Because there is no briefing on this issue, the Court does not discuss it further. *See, e.g.*, *Hausknecht v. John Hancock Life Ins. Co. of N.Y.*, 614 F. Supp. 3d 168, (E.D. Pa. 2022) ("This Court's role is not to craft arguments for the parties, especially those represented by counsel.").

*Litig.*, 35 F.3d at 752 ("As part of the burden of proof, then, Pennsylvania's rule is a substantive one, not in conflict with Federal Rules of Evidence, and thus governs in federal court."). An expert fails to meet "this standard of certainty if he testifies 'that the alleged cause possibly, or could have led to the result, that it could very properly account for the result, or even that it was very highly probable' that it caused the result.'" *Kravinsky*, 396 A.2d at 1356 (quoting *Niggel v. Sears, Roebuck & Co.*, 281 A.2d 718, 719 (Pa. 1971)); *see also Hoefling*, 576 F. Supp. 3d at 286 ("A reasonable degree of medical certainty requires more than a finding by a preponderance of the evidence."); *Soldo*, 244 F. Supp. 2d at 526 ("Opinions merely expressing 'possibilities' do not suffice to support the admissibility of expert testimony."). Dr. Ashraf's report and deposition testimony show that his opinions are insufficient under this standard.

First, Dr. Ashraf's report concludes that "[t]he inhalation of the toxic substances likely led to the development of pulmonary disease for Mr. Riad." (Doc. No. 9-5 at 5.) Contrary to Riad's suggestion, "likely" does not equate to a reasonable degree of medical certainty. *See Chimenti v. Wetzel*, Civil Action No. 15-3333, 2018 WL 3388305, at *13 (E.D. Pa. July 12, 2018) ("We conclude that Dr. Cecil's opinion satisfies the standard of certainty except with respect to his statement that [the plaintiff]'s diabetes is 'likely related to his HCV' as this statement fails to comply with the requisite standard of certainty for causation." (internal citations omitted)); *Karkalas v. Martin*, No. 3176 EDA 2015, 2016 WL 5920417, at *10 (Pa. Super. Ct. Sept. 6, 2016) ("Dr. Kerson's opinion that Appellant's symptoms after the accident 'likely reflect' post-concussive syndrome was simply not rendered with the required degree of medical certainty," and therefore, "[t]he trial court did not err in finding that [the expert's report was] insufficient to demonstrate causation.").[8]

---

[8] Riad spends much of his brief arguing that Dr. Ashraf's conclusions on causation are sufficient because they are based on differential diagnoses and a close temporal relationship between when Riad

Second, during his deposition, Dr. Ashraf confirmed that he was unable to reach a conclusion on causation with a reasonable degree of medical certainty:

> Q. [A]re you able to opine that Mr. Riad has a lung condition, disease or negative process that was caused by his inhalation, or alleged inhalation, of coolant on November 30, 2016?
>
> A. I think there is the *possibility* specifically in this situation of irritant-induced asthma. The reason I say that is when I looked at it from a clinical standpoint, I see that prior to the exposures the patient states he did not have any pulmonary symptoms, was not on any inhalers. After the exposure history, per Mr. Riad, is when his symptoms started. And that's the basis of my *possible* diagnosis of irritant-induced asthma.
>
> Are there other possible confounding variables in this case, there are. And I recall while writing this case, actually it's really difficult to say for sure 100 percent either way. It's a positive that Mr. Riad had improvement of his symptoms with the inhaler therapy, but what I would like to see for 100 percent guarantee or certainty without a degree of medical doubt, like you say, is the methocoline testing and repeated pulmonary testing, and CT scan as well.
>
> . . . .
>
> Q. So if I understand you correctly, as you sit here today you're not able to say to a reasonable degree of medical certainty that Mr. Riad has a lung disease related to inhalation of coolant?
>
> . . . .
>
> A. Imagine that would be no, because I don't think that the workup is complete.
>
> . . . .
>
> Q. And sitting here today, can you determine the likely or possible cause of the irritant-induced asthma?
>
> . . . .

---

inhaled the fumes and when he developed respiratory problems. (Doc. No. 113 at 13–22 (citing *Heller v. Shaw Indus., Inc.*, 167 F.3d 146 (3d Cir. 1999) and *Kannankeril v. Terminix Intern'l, Inc.*, 128 F.3d 802 (3d Cir. 1997), each of which considered the admissibility of expert testimony).) But the fact that there may be sufficient evidence to support an expert's finding of causation to a reasonable degree of medical certainty does not change the fact that Dr. Ashraf made no such finding here.

       A.      The *possibilities* obviously include the vapors he inhaled. That's definitely on the list.

       Q.      Can you state that within a reasonable degree of medical certainty?

       [Opposing Counsel]:  That what, it's a possibility?

       A.      It's a *possibility*, yes.

. . . .

       Q.      Do you stand by your report, that it was likely the cause?

       A.      It's a *possible* cause, yes.

(Dr. Ashraf Dep. Tr. at 112:3–114:2, 160:7–161:5 (emphases added).) Again, it is not enough for an expert to opine about "possibilities" as Ashraf did. *Cf. Kemmerer v. State Farm Ins. Co.*, No. Civ.A. 01-5445, 2004 WL 87017, at *3 (E.D. Pa. Jan. 19, 2004) ("Opinions merely expressing 'possibilities' do not suffice to support the admissibility of expert testimony; an expert must supply more than a bottom line to be of value to the judicial process."); *McLeod v. Dollar Gen.*, Civil Action No. 13-3113, 2014 WL 4634962, at *5 n.3 (E.D. Pa. Sept. 16, 2014) ("Dr. DiStefano's opinion that plaintiff's degenerative arthritis of the left hip 'may have been aggravated' by the accident does not make the existence of such a causal relationship more or less likely. Accordingly, the opinion is too tentative to assist the jury in making a determination on causation.").[9]

      Because Dr. Ashraf cannot opine as to causation with a reasonable degree of medical

---

[9] Although Dr. Ashraf states that he can "reasonably assert within a degree of medical certainty that Mr. Riad now suffers from pulmonary pathology which was not present before November 2016," that is not the same as opining the exposure to antifreeze fumes *caused* that pathology, nor does it cure the speculative nature of his causation opinions. *See McLeod*, 2014 WL 4634962, at *5 ("Dr. DiStefano's opinion that plaintiff's accident 'may have' aggravated plaintiff's degenerative arthritis of the left hip is inadmissible . . . . Although Dr. DiStefano concludes his report with the statement that his opinions 'have been rendered with a reasonable degree of medical certainty,' that does not cure the lack of certainty of Dr. DiStefano's opinion regarding the alleged causal link between plaintiff's accident and an aggravation of her degenerative arthritis of the left hip.").

certainty, and Riad has not put forth any other medical expert to opine on causation,[10] Porsche is entitled to summary judgment on Riad's product liability claims.  *See Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 159 n.8 (3d Cir. 1999) (excluding expert's causation testimony and finding summary judgment was warranted because without the expert's testimony "there was insufficient evidence of causation to get to the jury"); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 752 ("[I]n analyzing the testimony of Dr. Sherman and other witnesses with respect to particular plaintiffs, we will uphold the district court's grant of summary judgment for the defendants in those instances when the plaintiffs' expert states the [sic] he or she could not testify that a plaintiff's illness was caused by PCBs with a reasonable degree of medical certainty."); *Hoefling*, 576 F. Supp. 3d at 285 (holding that if a plaintiff cannot show medical causation to a reasonable degree of medical certainty "summary judgment is appropriate").

## IV.   CONCLUSION

Because Riad has not put forth admissible evidence of medical causation, Porsche is entitled to summary judgment on Riad's claims.  The Court need not address Porsche's remaining arguments in favor of summary judgment.  An appropriate order follows.

---

[10] Riad suggests that his treating physicians will testify that the fumes caused his respiratory injuries.  (Doc. No. 113 at 14.)  But none of his physicians have been designated as causation experts, nor is there anything to suggest that their causation conclusions were made to a reasonable degree of medical certainty.  *See Valido-Shade v. Wyeth LLC*, 57 F. Supp. 3d 457, 461 & n.4 (E.D. Pa. 2014) ("Both [treating] physicians have testified that [the plaintiff] has PAH and both have concluded that her use of [the defendant's] diet drugs caused her illness.  However, neither has been designated by plaintiffs as a causation expert and in any event neither has based his causation conclusion on a reasonable degree of medical certainty."); *Garcia v. United States*, Civil Action No. 3:17-CV-01910, 2022 WL 19569519, at *6 (M.D. Pa. Dec. 14, 2022), *report and recommendation adopted*, No. 3:17cv1910, 2023 WL 8281686 (M.D. Pa. Nov. 30, 2023) ("[W]here a treating physician's statements reflect that the physician only treated and diagnosed the patient—rather than conduct any analysis of causation—courts have found the plaintiff cannot meet the burden of proof on causation.").